**Ex parte Robert LUSTER.**

**No. 2–92–192–CR.**

Court of Appeals of Texas,
Fort Worth.

Jan. 28, 1993.

Rehearing Overruled March 2, 1993.

Discretionary Review Refused
May 5, 1993.

Ward Casey, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., and Jane Ritter, Asst., Fort Worth, for appellee.

Before WEAVER, C.J., and LATTIMORE and CLYDE R. ASHWORTH (Retired, Sitting by Assignment), JJ.

## OPINION

LATTIMORE, Justice.

Luster filed a pretrial application for writ of habeas corpus seeking dismissal of his indictment on the ground that the statute under which he was charged is unconstitutionally vague as applied to the facts alleged in the indictment and recorded in the police offense reports. This appeal is brought from the trial court's denial of his requested relief.

We affirm.

Luster was indicted under the Texas Controlled Substances Act ("Act") for the offense of illegal investment which is codified in TEX. HEALTH & SAFETY CODE ANN. § 481.126(a)(2) (Vernon 1992). The indictment charges that "LUSTER ... did ... INTENTIONALLY AND KNOWINGLY FINANCE AND INVEST FUNDS HE KNEW AND BELIEVED WERE INTENDED TO FURTHER THE COMMIS-

SION OF THE OFFENSE OF AGGRAVATED MANUFACTURE OF A CONTROLLED SUBSTANCE, NAMELY AMPHETAMINE OF MORE THAN TWO-HUNDRED GRAMS, INCLUDING ANY ADULTERANTS AND DILUTANTS." At the hearing, the State made the police offense reports available to Luster under its open file policy. These reports show that Luster was arrested as the result of a police undercover operation involving the sale of certain precursor chemicals and laboratory equipment. The chemical substances involved in the transaction were phenylacetic acid, methylamine, sodium acetate, and ether. The laboratory equipment included triple neck flasks, a heating mantle with controls, and condensing tubes.

The following statutes are applicable to charging an offense under section 481.126(a)(2):

§ 481.002. **Definitions**

In this chapter:

. . . .

(5) "Controlled substance" means a substance, including a drug and an immediate precursor, listed in Schedules I through V or Penalty Groups 1 through 4.

. . . .

(22) "Immediate precursor" means a substance the commissioner finds to be and by rule designates as being:

(A) a principal compound commonly used or produced primarily for use in the manufacture of a controlled substance;

(B) a substance that is an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance; and

(C) a substance the control of which is necessary to prevent, curtail, or limit the manufacture of a controlled substance.

. . . .

§ 481.103. **Penalty Group 2**

(a) Penalty Group 2 consists of:

. . . .

(3) unless specifically excepted or unless listed in another Penalty Group, a material, compound, mixture, or preparation that contains any quantity of the following substances having a potential for abuse associated with a depressant or stimulant effect on the central nervous system:

Amphetamine, its salts, optical isomers, and salts of optical isomers. . . .

. . . .

§ 481.113. **Offense: Manufacture or Delivery of Substance in Penalty Group 2**

(a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 2.

. . . .

(c) A person commits an aggravated offense if the person commits an offense under Subsection (a) and the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 28 grams or more.

. . . .

§ 481.126. **Offense: Illegal Expenditure or Investment**

(a) A person commits an offense if the person knowingly or intentionally:

. . . .

(2) finances or invests funds the person knows or believes are intended to further the commission of an offense listed [under section 481.113(c)].

(b) An offense under this section is punishable by confinement in the [Institutional Division of the Texas Department of Criminal Justice] for life or for a term of not more than 99 years or less than 5 years, and a fine of not more than $1,000,000 or less than $50,000.

TEX. HEALTH & SAFETY CODE ANN. §§ 481.002, 481.103, 481.113, 481.126 (Vernon 1992).

■ As his sole point of error, Luster argues that section 481.126(a)(2) is unconstitutionally vague as applied to the facts alleged in the indictment and recorded in the police offense reports. Luster presents three arguments in support of his position.

First, he asserts that section 481.126(a)(2) is vague because the term "further" is so broad, general, and elastic that it makes criminal the same conduct specifically forbidden by other sections of the Act. The other sections which he insists the State could charge him under are TEX. HEALTH & SAFETY CODE ANN. §§ 481.079, 481.082 (Vernon 1992).[1] Second, Luster argues that section 481.126(a)(2) is vague because it authorizes punishment greater than that authorized by either section 481.079 or 481.082.

■■■ Without deciding whether there is in fact any overlap between the conduct prohibited by sections 481.126(a)(2), 481.079, and 481.082, we hold that Luster's arguments do not show that section 481.126(a)(2) is void for vagueness. The proper inquiry when a statute is attacked for vagueness is whether it gives a person of ordinary intelligence fair notice that his contemplated conduct is forbidden and also gives sufficient notice to those who enforce the statute so as to prevent arbitrary and discriminatory enforcement. *See Bynum v. State,* 767 S.W.2d 769, 773 (Tex.Crim.App.1989); *Stevens v. State,* 817 S.W.2d 800, 804 (Tex.App.—Fort Worth 1991, pet. ref'd). Thus, the fact that a defendant's conduct violates more than one statute does not make the statute vague so long as the proscribed conduct is described in a manner that gives fair notice of what is forbidden. *See Earls v. State,* 707 S.W.2d 82, 86–87 (Tex.Crim.App.1986). Similarly, the fact that different punishments are authorized by more than one applicable statute does not detract from a defendant's notice of the punishment under each. *See United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755, 764 (1979). So long as a criminal statute clearly defines the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied. *See id.*

■■■ The third argument Luster makes under this point is that he did not have fair notice that financing or investing funds for a transaction involving phenylacetic acid

was forbidden under section 481.126(a)(2) because that substance is not listed in Penalty Group 2. We recognize that phenylacetic acid is not specifically listed in Penalty Group 2; however, in light of the definition of a controlled substance, we hold that Luster nonetheless had fair notice that his conduct was prohibited.

As used in the Act, "controlled substance" means a substance, including a drug and an immediate precursor, listed in Schedules I through V or Penalty Groups 1 through 4. TEX. HEALTH & SAFETY CODE ANN. § 481.002(5). Amphetamine is a drug listed in Penalty Group 2, TEX. HEALTH & SAFETY CODE ANN. § 481.103(a)(3), and phenylacetic acid is a main precursor used to make amphetamine. *Reeves v. State,* 806 S.W.2d 540, 541 n. 2 (Tex.Crim.App.1990) (opinion on reh'g), *cert. denied,* — U.S. ——, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991). Thus, Luster had fair notice that his transaction involving phenylacetic acid was forbidden by section 481.126(a)(2). We overrule Luster's sole point of error.

The denial of the relief requested in Luster's application for writ of habeas corpus is affirmed.

---

1. .Section 481.079 prohibits the unlawful transfer or receipt of chemical precursor and section 481.082 prohibits the unlawful transfer or receipt of chemical laboratory apparatus. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.079, 481.082.